**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAUREN C., an adult with a disability, | : |
| | :     No. |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| THE SCHOL DISTRICT OF | : |
| PLILADELPHIA, PAUL VALLAS, | |
| Individually and in his official capacity as | : |
| CHIEF EXECUTIVE OFFICER OF THE | |
| SCHOOL DISTRICT OF PHILADELPHIA, | : |
| BRENDA B. TAYLOR, individually and | |
| In her official capacity as ASSOCIATE | : |
| SUPERINTENDENT, OFFICE OF SPECIAL | |
| SERVICES, SCHOOL DISTRICT OF | : |
| PHILADLEPHIA, and  LYNORE EISMAN, | |
| individually and in her Official capacity as | : |
| TRANSITION COORDINATOR, SCHOOL | |
| DISTRICT OF PHILADELPHIA, | : |
| Defendants. | : |

**COMPLAINT**

1. This is an appeal of the decision of the Pennsylvania Special Education Appeals Review Panel in a case pertaining to the entitlement to special education and related services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq*., and the judicial review provisions of the Act at 20 U.S.C. § 1415 (j).  This case is also brought to recover compensatory and punitive damages against the Defendants for the violation of the Plaintiff's rights to a free, appropriate public education under the Individuals With Disabilities Education Act, (IDEA), 20 U.S.C. § 1401

*et seq.,* including the failure to implement the decision of the Appeals Panel, and under Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act, 29 U.S.C. § 794 and 42 U.S.C. §§ 12161 and 12165.  The Plaintiff further seeks the recovery of attorney's fees and costs due to the plaintiffs pursuant to 20 U.S.C. § 1415.

**Jurisdiction and Venue**

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343 in that this case asserts causes of action that raise a federal question.  The Court has ancillary jurisdiction over all causes of action that arise under state law.

3.   Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiffs reside within Philadelphia County, Pennsylvania, where the Defendant school district and its schools are located and all of the actions or omissions complained of have taken place within Philadelphia County.

4.   Plaintiff Lauren C. is a nineteen year old adult who resides within the School District of Philadelphia (District).

**Parties**

5.   Plaintiff, Lauren C.,  was identified as a "child with a disability" and in need of special education services under the IDEA by the District and, as such, was entitled to a free, appropriate public education under the IDEA, 20 U.S.C. § 1412, and to reasonable accommodations of her disability under § 504 of the Rehabilitation Act and the ADA.  Lauren graduated from high school in June, 2004, but requested a due process hearing to recover compensatory education on April 6, 2005.

6.   The School District of Philadelphia is a public school district and, as such, is a "Local Educational Agency" within the meaning of the IDEA, 20 U.S.C. § 1401(15), and is charged with the obligation of properly evaluating and providing a FAPE to children with disabilities, such as Lauren, who reside within the District and are eligible for special education services under the

IDEA.

7. The District is also a recipient of federal funds and is a "public entity" within the meaning of 42 U.S.C. § 12141 and is, therefore, charged with providing reasonable accommodations under § 504 of the Rehabilitation Act and under the Americans With Disabilities Act.

8. Defendant Paul Vallas is the Superintendent of the School District of Philadelphia and, in that capacity, has the responsibility to assure that students with disabilities, who are eligible for special education services, are provided with a Free Appropriate Public Education consistent with the provisions of the IDEA, and that students with disabilities who are entitled to reasonable accommodations under § 504 of the Rehabilitation Act and under the ADA receive such accommodations.

9. Defendant Brenda B. Taylor is an Associate Superintendent who supervises the Office fo Special Services in the District. Defendant Taylor has the responsibility to assure that students with disabilities, who are eligible for special education services, are provided with a Free Appropriate Public Education consistent with the provisions of the IDEA, and that students with disabilities who are entitled to reasonable accommodations under § 504 of the Rehabilitation Act and under the ADA receive such accommodations.

10. Defendant Lynore Eisman was, at various times pertinent to the allegations in this Complaint, the Transition Coordinator for the District and, in that capacity, had the responsibility to assure that students with disabilities and eligible for special education services received the transitional services required under the IDEA.

**Statutory and Regulatory Background**

11. Under the IDEA and relevant implementing regulations, 34 CFR Part 300, each state, and each local educational agency within a state, is required to locate, evaluate and identify every child with

a disability who resides within the District.

12. A disability, for purposes of the IDEA, includes any one of the disabilities specifically enumerated in the Act and its implementing regulations. An example of such a disability is "specific learning disability", which is defined as a disorder in one of more of the basic psychological processes involved in understanding or in using language, spoken or written, that may manifest itself in an imperfect ability to listen, think, speak, read, write, and spell or to do mathematical calculations. 34 C.F.R. § 300.7(a)(10).

13. Any student with a disability, who needs special education to benefit from his or her educational programming, and meets the state mandated age range, is an eligible child with a disability within the meaning of 20 U.S.C. § 1401 (a). Once identified as a special education student, the student is entitled to appropriate related services as may be needed to benefit from educational programming.

14. "Special education", as that term is defined under 34 CFR § 300.26(b)(3), includes specially designed instruction that adapts the content and delivery of instruction to meet the needs of an IDEA eligible student and to address the unique educational needs that result from the student's disability.

15. Related services, as that term is defined at 20 U.S.C. § 1401 (22), are supportive services provided to help the student with a disability benefit from special education.

16. A child with a disability who meets the eligibility requirements of the IDEA is also a "handicapped person" under § 504, in accordance with the definition of eligibility for accommodations as set forth at 34 CFR § 104.3.

17. The IDEA further requires that, for students with disabilities who attain the age of 16, a school district must include, in the student's IEP, a Transitional Services Plan that is defined as a

"coordinated set of activities" that is designed to promote the student's movement from school to post-school endeavors such as post-secondary education, vocational training, integrated employment or independent living. 20 U.S.C. § 1412 (d), 34 C.F.R. § 300.347 (a)(1) –(4). The transitional services plan may include instruction, related services, community experiences, the development of employment or other post-school objectives or, if appropriate, acquisition of daily livig skills. 34 C.F.R. § 300.29.

18. If a child with a disability meets the eligibility requirements of the IDEA, a district violates its obligation under the IDEA and under § 504 if it fails to provide the child with a free, appropriate public education, (FAPE) in accordance with the procedures required under the Act, as mandated by 20 U.S.C. § 1412 (a) and its implementing regulations at 34 C.F.R. Part 300, and § 504 of the Rehabilitation Act and its implementing regulations at 34 C.F.R. §§104.32 – 36.

**Factual Allegations**

19. Lauren attended school within the District since the 1991-1992 school year - her Kindergarten year. She experienced difficulty with academic content of the class even at that time, and repeated her kindergarten year.

20. Lauren was identified as a child with a Learning Disability in March, 1993, during her second kindergarten year. The finding of Learning Disability was based upon the results of the Weschler Intelligence test for Children – 3rd Ed., which indicated that she had average intelligence, and average to superior ability in vocabulary development, common sense reasoning and verbal abstraction. At that time, Lauren was 6 years, 4 months old.

21. As of March in the 1992-1993 school year, Lauren's second kindergarten year, Lauren could write and recognize her first name, but could not identify any of the letters in her first name, nor could she spell her first name. She could rote cont only to the number 6, and could identify

numbers only to 5 as is expected of children at that point in the kindergarten year.

22. In addition to her learning Disability, Lauren was also found by the District to have Attention Deficit Hyperactivity Disorder (ADHD).

23. During her elementary and middle school years, Lauren struggled with academic learning. Her grades continually reflected poor performance. Nonetheless, the district failed to address Lauren's poor performance by conducting further evaluation to analyze the nature of her difficulty or by amending her IEPs to adjust the delivery of her instruction.

24. Out of concern for Lauren's lack of progress, her mother hired a private tutor to work with Lauren. The tutor worked with Lauren during the summer of 2000, prior to her 9th grade year. In September, 2000, the tutor, a former teacher, wrote a letter ot the District explaining that Lauren was unable to recognize 15% of the words on the Dolch list of basic words for beginning reading. The tutor reported that Lauren needed "considerable" help with phonics and that she had not yet mastered such basic reading skills as recognition of vowel and consonant sounds, diagraphs, dipthongs and blends.

25. The tutor recommended that the District provide intensive remedial instruction in reading at Lauren's level and further recommended that Lauren receive one-on-one instruction.

26. Despite the fact that Lauren's academic performance was consistent with the report by the private tutor, the District ignored the tutor's recommendations and, during the 9th grade, provided Lauren with special education instruction by placing her in a "Mixed Categorical Program" (MCP) that consisted of instruction in all academic subjects by a special education teacher in a group setting. The students moved from class to class but remained in the same group.

27. The teacher did not utilize any of the research-based methods for instruction of students with Learning Disabilities in reading, math or written expression, nor was Lauren provided with one-to-

one instruction.

28. At the beginning of her 9th grade year, Lauren was reading at a 2.1 grade level and her math skills were measured at the 3.3 grade level. During that year, she moved to a 4.1 grade level n reading and a 3.3 grade level in math.

29. During her 10th grade year, Lauren was placed into a "Functional Learning Support" (FLS) class – also referred to as a "minimal cycling class". In this class, students were taught by more than one teacher, but remained in the same class for all academic subjects. Students are moved to this class if their progress has been minimal (regardless of the reason) or if attendance was poor.

30. Lauren's reading instruction during her high school years was based upon the "word recognition" or "whole word" approach, which do not incorporate instruction in phonics, decoding or spelling.

31. The District did not utilize a structured math program, such as Saxon Math, or any other program that is specially designed for teaching math skills to students with learning disabilities in math, to deliver Lauren's instruction in math.

32. The Individual Education Programs (IEPs) that were developed for Lauren during her 9th through 12th grade years were grossly deficient and failed to comply with the requirements of the IDEA, as specified in 20 U.S.C. § 1414 (d) and 34 C.F.R. §§ 300.340-300.348, that IEPs must identify all of the student's areas of need and must address all of the student's areas of academic deficit through the development of goals and objectives that are objective, measurable and that represent progress that is meaningful for the student. The IEPs developed for Lauren further failed to include appropriate specially designed instruction, and failed to address her previously diagnosed ADHD.

33. The District further failed to conduct appropriate evaluations of Lauren throughout her enrollment in the District. Specifically, the evaluations conducted by the District, particularly during Lauren's high school years, failed to address her ADHD, and further failed to evaluate Lauren's

cognitive ability since those abilities were first measure during her kindergarten year. The District utilized and relied upon the Multi-Level Academic Survey Teat (MAST), to assess Lauren's academic functioning. The MAST failed to provide the information that is required to provide the basis for the development of an appropriate IEP. For instance, the MAST did not provide specific information as to Lauren's abilities in the areas of whole word reading, decoding and reading comprehension, nor did it differentiate among math calculation, math concepts and math applications. The Hearing Officer aptly described the reading and math scores that were provided by the MAST as "simplistic".

34. In addition to the deficiencies described in the preceding paragraph, the District failed to assess Lauren's skills in the area of written expression, thereby rendering it impossible for the IEP team to appropriately address this area of academic deficit in Lauren's IEPs.

35. The District further failed to devise and implement appropriate transitional services plans into Lauren's IEPs from the time that she attained the age of 14 to her graduation from high school, in violation of the IDEA, 20 U.S.C. § 1414 (d) and 34 C.F.R. § 300.347(a).

36. Relying upon a review of attendance records and report cards, the Hearing Officer found that, during Lauren's 9th through 11th grade years, despite the almost total failure of the District to provide Lauren with an appropriate education, Lauren had good attendance and maintained a positive attitude, as shown by teacher comments, noting participation in class discussions, good work habits, good effort and a positive attitude.

37. Since the time that Lauren attended elementary and middle school, there was an ample body of professional research that recommended the use of a systematic, phonics based method of instruction for students, like Lauren, who had learning disabilities in reading. Such methods are based on the Orton-Gillingham approach and include well recognized methods such as the Wilson

8

Reading method, Lindamood-Bell and other phonics-based reading programs.

38. During that same period of time, the use of the "whole word" approach to reading instruction for children with learning disabilities had been discredited.

39. Lauren's mother requested a due process hearing on April 6, 2005, in which she requested compensatory education for the failure to provide Lauren with an appropriate education throughout her enrollment in the District.

40. The Hearing Officer, Linda M. Valentini, Psy.D., entered her decision on January 15, 2006. the hearing officer preliminarily ruled that the scope of the hearing was limited by the one year limitation that was established by the Pennsylvania Commonwealth Court in *Montour School District v. S.T.,* 805 A.2d 29, (Pa. Commw. 2002), in which the Court held that claims for compensatory education are subject to a one year statute of limitations.

41. The Hearing Officer further concluded, as is more fully described in the preceding allegations, that the District failed to provide Lauren with an appropriate education and ordered that the District provide Lauren with 270 hours of compensatory education, representing full days of compensatory education for the 45 day period that the Hearing Officer deemed to fall within the scope of the hearing.

42. The Plaintiff, through her counsel, has direct two letters to counsel for the District in an attempt to obtain instructions for the use of the compensatory education that was awarded by the Hearing Officer. However, the letters that were sent to District counsel have been ignored, rendering the compensatory education award unusable to the Plaintiff.

43. The parent appealed the decision of the Hearing Officer that the one year limitation as established by *Montour School District v. S.T., supra,* applies to Lauren's claim. The District did not appeal the Hearing Officer's decision.

44. The Appeals Panel, per Appellate Officer Perry A. Zirkel, affirmed the decision of he Hearing Oficer but expressed, in dicta, the opinion that the Hearing officer did not reduce the compensatory education award for absenteeism, despite the Hearing Oficer's clear and well supported findings on this point.

45. As a result of the District's pervasive failure to provide Lauren with an appropriate education, Lauren has suffered a profound loss of educational opportunity. As a direct and proximate result of the District's failures, Lauren has incurred a profound loss of vocational opportunity, potential earnings.

46. As a direct and proximate result of the District's failure to comply with the legal mandates to provide her with an appropriate education, Lauren has become clinically depressed, and requires medical and psychological treatment to address her depression.

47. Defendant School District of Philadelphia, and its Superintendents, special education supervisors, staff and school psychologists, have implemented a pattern and/or practice of failing to provide students such as Lauren with an appropriate education as required by the IDEA, and with reasonable accommodations as required by § 504 of the Rehabilitation Act and the ADA.

48. Defendants Vallas, Taylor and Eisman knew of should have known that the evaluations and IEPs provided to Lauren throughout her enrollment in the District failed to comply with the requirement to provide her with an appropriate education as such obligations were clearly established at the time of the Plaintiff's enrollment in the District.

## **CAUSES OF ACTION**
## **COUNT I - IDEA**

49. The Defendants, by the actions described herein, have deprived the Plaintiff, Lauren C., of her rights under the IDEA, 20 U.S.C. § 1400 et seq., 34 C.F.R. Pt. 300 and 22 Pa. Code, Ch. 14, to a

timely evaluation and to a free appropriate public education.

50. The Defendant's actions of failing to assure that Plaintiff, Lauren C. received a timely and appropriate evaluation in all suspected areas of disability and a timely and appropriate IEP violated the Plaintiff's rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its regulations at 34 C.F.R. Chapter 104.

51. Defendant's actions have deprived the plaintiff of her rights under federal law in violation of 42 U.S.C. § 1983.

52. The Appeals Panel, in its decision No. 1700 of the Special Education Appeals Review Panel, dated February 21, 2006, erred by applying the one year limitation in *Montour School District v. S.T.,* 805 A.2d 29 (Pa. Commw. Ct. 2002).

**Relief**

Wherefore, the Plaintiff requests the following relief:

a. That this Court enter judgment in favor of the Plaintiff and against the Defendants on all causes of action set forth in this Complaint.

b. That this Court reverse decision No. 1700 of the Special Education Appeals Review Panel, dated February 21, 2006, insofar as the Panel applied the one year limitation in *Montour School District v. S.T.,* 805 A.2d 29 (Pa. Commw. Ct. 2002).

c. That this Court award compensatory and punitive damages to plaintiff, Lauren C., for the violation of her statutory and civil rights in accordance with 42 U.S.C. § 1983;

d. That this Court award Plaintiff reasonable attorney's fees and costs incurred in this action and in the prosecution of the due process shearing and subsequent

    appeal in accordance with 20 U.S.C. § 1415 (i)(3)(B), and 42 U.S.C. § 1988, and;

e.  That this Court grant such other and further relief as this Court deems just and appropriate.

                              Respectfully submitted:

                              _____
                              Frederick M. Stanczak (FMS308)
                              179 North Broad Street
                              Doylestown, PA 18901
                              (215) 340 5000
                              ID No. 27773
                              Attorney For Plaintiffs

Dated: <u>May 20, 2006</u>